MARK GOLDROSEN, CASB 10173
Attorney at Law
255 Kansas Street, Suite 340
San Francisco, CA 94103
TEL: (415) 565-9600
FAX: (415) 565-9601

Attorney for Petitioner
JAVED ASLAM

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVED ASLAM, | No. |
| Petitioner, | PETITION FOR WRIT OF HABEAS CORPUS, 28 U.S.C. SECTION 2254 |
| v. | |
| JOSIE GASTELO, | |
| Respondent. | |
| _____ | |

Petitioner Javed Aslam petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and makes the following averments and statements in support of his petition.

**A.     INFORMATION ABOUT THE CONVICTION AND SENTENCE**

**1.     What sentence are you challenging in this petition?**

**(a)     Name and location of court that imposed sentence:** Alameda County Superior Court, Oakland, California.

**(b)     Case Number:** 163828.

**(c)     Date and terms of sentence:** June 17, 2012. Sentenced to prison for 14

1

1 years, and eight months.

2     **(d)**    **Are you now in custody serving time:** Yes. California Men's Colony,
3 Highway 1, San Luis Obispo, CA 93409.

4    **2.**    **For what crimes were you given this sentence:** California Penal Code sections
5 288, subdivision (a) (lewd or lascivious act on child under age 14), 261.5 (engaging in unlawful
6 intercourse), and 136.1 (three counts - dissuading a witness).

7    **3.**    **Did you have any of the following:**

8        **Arraignment:** Yes.

9        **Preliminary Hearing:** Yes.

10        **Motion to Suppress:** No.

11    **4.**    **How did you plead?** Not guilty.

12    **5.**    **If you went to trial, what kind of trial did you have?** Jury trial.

13    **6 .**    **Did you testify at trial?** No.

14    **7.**    **Did you have an attorney at the following proceedings:**

15        **Arraignment:** Yes.

16        **Preliminary Hearing:** Yes.

17        **Time of Plea:** Yes.

18        **Trial:** Yes.

19        **Sentencing**: Yes.

20        **Appeal:** Yes.

21        **Other post-conviction proceeding:** Yes.

22    **8.**    **Did you appeal your conviction?** Yes.

23        **If you did, to what court(s) did you appeal?**

24        **Court of Appeal:** Yes (both direct appeal (No. A132445) and petition for writ of
25 habeas corpus (No. A137222, which were consolidated).

26        **Year:** 2013    **Result:** Affirmed.

28        2

**Supreme Court of California:** Yes (No. S216384).

**Year:** 2014   **Result:** Petition for review denied on April 16, 2014.

**Any other court:** No.

**If you appealed, were the grounds the same as those that you are raising in this petition?** No.

**Was there an opinion?** Yes, by the Court of Appeal.  See opinion attached as Exhibit A.

**Did you seek permission to file a late appeal under Rule 31(a)?** No.

9. **Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in court, state or federal?** Yes. Petition for a writ of habeas corpus filed in California Court of Appeal on April 3, 2015 and summarily denied on April 9, 2015 with directions that petitioner first seek relief in superior court (No. A144698).  Petition for a writ of habeas corpus filed in Alameda County Superior Court on April 16, 2015 and denied with a written opinion (attached as Exhibit B) on February 26, 2016 (No. 163828).  Petition for a writ of habeas corpus filed in California Court of Appeal on April 18, 2016 and summarily denied on May 5, 2016 (No. A148037).  Petition for review filed in California Supreme Court on May 16, 2016 and summarily denied on July, 13, 2016 (No. S234540, order attached as Exhibit C).  The grounds in each of the state court petitions described in this paragraph were the same as those being raised in this petition.

B. **GROUNDS FOR RELIEF**

**Claims One - Two:** See attached.

**If any of these grounds was not previously presented in any other court, state or federal, state briefly what grounds were not so presented and why:** All present claims were previously presented to the California superior court, the California Court of Appeal and the California Supreme Court, as explained above in paragraph 9.

**Do you have an attorney for this petition:** Yes

**If you do, give the name and address of your attorney:** Mark Goldrosen, Attorney at Law, 255 Kansas Street, Suite 340, San Francisco, CA 94103

Wherefore, petitioner prays that the Court grant petitioner relief to which he maybe entitled in this proceeding.

DATED: July 18, 2016                                   Respectfully submitted,


                                                /s/ Mark Goldrosen
                                                MARK GOLDROSEN
                                                Attorney for Petitioner
                                                JAVED ASLAM

I declare under penalty of perjury that he forgoing is true and correct. Executed on July, 18, 2016.


                                                /s/ Javed Aslam
                                                JAVED ASLAM

I attest that I have obtained Javed Aslam's concurrence in the filing of this petition for a writ of habeas corpus pursuant to 28 U.S.C. section 2254. Executed on July 18, 2016, in San Francisco, California.


                                                /s/ Mark Goldrosen
                                                MARK GOLDROSEN

# GROUNDS FOR RELIEF

## POINTS AND AUTHORITIES IN SUPPORT THEREOF

**GROUND ONE: TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO ENTER A PLEA OF ONCE IN JEOPARDY OR OTHERWISE OBJECTING TO THE RETRIAL ON DOUBLE JEOPARDY GROUNDS; PETITIONER DID NOT CONSENT TO THE MISTRAL AND IT WAS NOT COMPELLED BY MANIFEST NECESSITY.**

**Supporting Facts:**

The facts pertinent to the issues raised in this petition for a writ of habeas corpus are the following. Facts related to the crimes for which petitioner was convicted are summarized in *People v. Javed Aslam,* 2013 WL 6859845, attached as Exhibit A.

**A.     Petitioner's First Trial and Declaration of Mistrial.**

In petitioner's first trial he was tried by a jury that was discharged without reaching a verdict on all counts.

The first trial commenced on November 9, 2010. The defense began presentation of its case on November 30, 2010. On December 6, 2010, near the completion of the defense case, petitioner's trial counsel, David Cohen, informed the court that he wished to bring something to the court's attention in an in camera hearing. The hearing was held in the court's chambers. Present initially at the hearing were Attorney Cohen, defense investigator Walt Stannard, the trial judge and the court reporter.   Petitioner was excluded from the hearing. RT, December 6, 2010, at 1.

At the hearing Cohen explained that the mother of the victim had recently left a number of messages with the defense investigator and with Cohen's office staff. The mother had not testified during the prosecution's case in chief because the prosecutor had been unable to locate her. Instead, her preliminary hearing testimony had been admitted pursuant to California Evidence Code section 1291. RT, December 6, 2010, at 1-2.

Three recent messages left for the investigator contained what was purportedly new exculpatory information. The mother now claimed, contrary to the testimony of her daughter, R.

L., that the person in the motel room with petitioner at the time of the alleged sexual assault was actually her niece using fake identification in the name of her daughter. Cohen believed that the receipt of this information caused him to have a conflict of interest with petitioner. RT, December 6, 2010, at 2.

According to Cohen, the nature of his conflict was the following. "That information in those calls is information that I have an obligation to my client to put on in front of the jury, because it's information that is exculpatory. It goes directly to the credibility of R[.] [L.] and [the mother], and it completely supports the defense that I've been putting forward in this case." However, Cohen was concerned "that there isn't any way that [the mother] could have known what my defense was and what I was arguing here in the courtroom because I have never spoken to her in my life." Nor had co-counsel or the defense investigator. Cohen believed that someone in the courtroom during the trial must have told the mother what the defense was. RT, December 6, 2010, at 3.

Cohen reiterated that he had a conflict of interest because he had an ethical duty not to put forward evidence "I believe is false, and which I believe could be potentially evidence that was obtained as a result of an attempted crime or an actual crime." At the same time, he believed he had a conflicting "obligation to present the evidence because it will be very, very helpful to my client's defense," despite his belief that it was fabricated. Because of this conflict, Cohen informed the court, "I don't believe that I can proceed with this case or with this trial." The trial court then noted that both petitioner and his wife had been present throughout the trial. RT, December 6, 2010, at 4.

Cohen added that: "I have an obligation to argue as to my client the information that I now have, the messages that were left over the weekend by [the mother], whereas I feel that they are false, and the result of some type of witness tampering at the same time, which is at odds with my obligation to the Court." RT, December 6, 2010, at 7-8. Cohen further believed that "the only way that my client could be appropriately represented is for an attorney who has no

connection with anything that's happened so far, to look at the state of the record in the case at this point and make whatever objective determinations are appropriate, consistent with that attorney's knowledge and expertise." RT, December 6, 2010, at 8.

After Cohen and his investigator provided the court with a compact disc containing the phone messages left by the mother for the investigator, Cohen's co-counsel, Cherie Beasley, and the prosecutor entered the chambers for the remainder of the confidential hearing. Under oath, Cohen declared he and all other members of the defense team had an actual conflict of interest with petitioner. RT, December 6, 2010, at 10. The trial court stated in response: "I will allow the conflict of interest to be filed. Based on that, I will find good cause to discharge the jury and declare a mistrial, and Mr. Cohen and his office will be allowed to withdraw." The court further ordered that the transcript of the in camera proceeding remain sealed. RT, December 6, 2010, at 10. Upon completion of the in camera hearing, the court informed the jury that it was declaring a mistrial and discharged the jurors. Petitioner did not have a chance to personally object to the mistrial. RT, December 6, 2010, at 12.

**B.    Trial Counsel's Failure to Object to Retrial on Grounds of Double Jeopardy.**

On December 16, 2010, Attorney Maureen Kildee was appointed to represent petitioner in the retrial. 1 CT 283. Kildee did not enter a plea of once in jeopardy or otherwise object to the retrial on grounds of double jeopardy. On February 10, 2011, Attorney Donald Foley was appointed to replace Kildee as defense counsel. 2 CT 322. Similarly, Foley did not enter a plea of once in jeopardy or otherwise object to the retrial on grounds of double jeopardy. The jury convicted petitioner at the retrial.

**Supporting Authorities:**

**A.    Petitioner Had a Constitutional Right to the Effective Assistance of Counsel.**

Under the Sixth Amendment to the United States Constitution, the right to effective counsel exists and is needed to protect the fundamental right to a fair trial. *Strickland v. Washington* (1984) 466 U.S. 668, 685. "The proper measure of attorney performance remains

7

simply reasonableness under prevailing professional norms." *Id*. at 688.  A defendant's conviction will be reversed due to ineffective assistance of counsel when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id* at 694.

In the instant case, there was no sound strategy that justified trial counsel's failure to enter a plea of once in jeopardy on petitioner's behalf or otherwise object to the retrial on double jeopardy grounds.  Such a plea or objection would not in any way have disadvantaged petitioner's case.  Moreover, there is a reasonable probability that but for trial counsel's unreasonable omission, a result more favorable to petitioner would have resulted since, as explained below, retrial was barred by the prohibition against double jeopardy.

In addition, to the extent trial counsel was unaware of the reason that the mistrial had been declared in the first trial, they were ineffective in failing to conduct an adequate investigation.  Trial counsel should have made a motion to review the sealed transcript of the proceedings on December 6, 2010, so that they could have learned the basis for the trial court's declaration of a mistrial.  No strategic reason could have justified their failure to make such an inquiry.  Had they made such an investigation they would have known that entry of a plea of once in jeopardy on behalf of petitioner or otherwise objecting to the retrial on double jeopardy grounds was warranted.  The Supreme Court has made clear that a criminal defendant's right to effective assistance of counsel includes the right to have counsel "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 691.

    **B.**    **Constitutional Prohibition Against Double Jeopardy Precluded a Retrial When Petitioner Did Not Consent and the Mistrial Was Not Based on a Manifest Necessity.**

The federal constitutional guarantee against double jeopardy is violated when a person is twice put in jeopardy. (U.S. Const., 5th & 14th Amends.; *Benton v. Maryland*, 395 U.S. 784

(1969).

> Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's valued right to have his trial completed by a particular tribunal. The reasons why this valued right merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Arizona v. Washington*, 434 U.S. 497, 503-505 (1978), internal quotation marks and footnotes omitted.)

Jeopardy attaches when the jury is empaneled and sworn, prior to the declaration of a mistrial by the trial court. *Crist v. Bretz*, 437 U.S. 28, 29 (1978); *United States v. Williams*, 717 F.2d 473, 475 (9th Cir. 1983). "If a case is dismissed after jeopardy attaches but before the jury reaches a verdict, a defendant may be tried again for the same crime only in two circumstances: (1) if he consents to the dismissal; or (2) if the district court determines that the dismissal was required by 'manifest necessity.'" *United States v. Bonas*, 344 F.3d 945, 948 (9th Cir. 2003) (citing *United States v. Bates*, 917 F.2d 388, 392 (9th Cir. 1991), *see also Arizona v. Washington*, 434 U.S. at 505 (1978); *United States v. You*, 382 F.3d 958, 964 (2004).

Here, petitioner did not consent to the mistrial declared by the trial court. Nor was a mistrial required by manifest necessity.

**C.    Petitioner Did Not Consent to the Mistrial.**

Since petitioner did not request or expressly consent to the mistrial, this issue turns on whether any statements or silences of petitioner or his counsel constituted implied consent. "[C]onsent to mistrial may be inferred 'only where the circumstances positively indicate a defendant's willingness to acquiesce in the mistrial order.'" *Weston v. Kernan*, 50 F.3d 633, 637 (9th Cir. 1995) (quoting *Glover v. McMackin*, 950 F.2d 1236, 1240 (6th Cir. 1991)). Moreover, "[c]onsent should not be assessed by the mechanical application of an absolute rule, but rather

9

by an analysis informed by the weighty considerations inherent in criminal jeopardy." *Glover*, 950 F.2d at 1240. A defendant does not consent to a mistrial, when he is not given an adequate opportunity to object to the court's sua sponte order. *United States v. Jorn*, 400 U.S. 470, 487 (1971); *United States v. Bates*, 917 F.2d 388, 393 (9th Cir. 1990) ("because [defendants] had no opportunity to object, we will not infer that they consented to the mistrial").

The circumstances here do not positively indicate petitioner's willingness to acquiesce in the mistrial order. During the in camera hearing, trial counsel never made reference to even the possibility of a mistrial. Rather, he called the trial court's attention to what he believed was a conflict of interest, specifically suggesting that the court have another attorney "look at the state of the record in this case at this point and make whatever objective determinations are appropriate, consistent with that attorney's knowledge and expertise." RT, December 6, 2010, at 8.

Nor did the trial court inquire with Cohen regarding the propriety of a mistrial before discharging the jury. Rather, immediately after accepting Cohen's declaration of a conflict of interest, the trial court stated, without advance notice, that it was finding good cause to discharge the jury and declare a mistrial, and was allowing Cohen and his office to withdraw as petitioner's counsel. Cohen did not have an opportunity to object before the mistrial was declared. Nor did petitioner, especially since he was not even present at the in camera hearing. RT, December 6, 2010, at 10.

Moreover, once the conflict was accepted by the court, Cohen could no longer act as petitioner's counsel and, therefore, was without the authority to consent to the mistrial on petitioner's behalf. Substitute counsel was not appointed until December 16, 2010. 1 CT 283. Petitioner was thus without representation when the superior court declared the mistrial.

**D.     The Trial Court's Declaration of a Mistrial Was Not Based on Manifest Necessity Because Trial Counsel Did Not Have a Conflict of Interest and Could Have Continued to Represent Petitioner Without Violating Any Ethical Duties.**

The requirement that a mistrial be justified by "manifest necessity" places a "heavy" burden on the prosecution. *Arizona v. Washington*, 434 U.S. at 505.  The Supreme Court construes the standard to require a "high degree" of necessity in order for the declaration of a mistrial to be appropriate. *Id*. at 506.  "Manifest necessity" exists "when the ends of public justice would not be served by a continuation of the proceedings." *United States v. Jorn*, 400 U.S. at 485.  In addition, "'the power [to declare a mistrial] ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.'" *Id*. at p. 506, fn. 18 (quoting *United States v. Perez*, 9 Wheat. at 580).

Additionally, the manner in which the trial court made its decision to declare a mistrial is a significant factor in determining whether manifest necessity existed.

> "The Supreme Court and appellate courts have relied on four indicators in determining whether the trial court abused its discretion. Has the trial judge (1) heard the opinions of the parties about the propriety of the mistrial, (2) considered the alternatives to a mistrial and chosen the alternative least harmful to a defendant's rights, (3) acted deliberately instead of abruptly, and (4) properly determined that the defendant would benefit from the declaration of mistrial?" *Bates*, 917 F.2d at 395-96. If a district court engages in this type of effort, it is much more likely to have exercised sound discretion in concluding that manifest necessity for a mistrial existed. *See id*. at 396.

*United States v. Elliot*, 463 F.3d 858, 864 (2006).

Here, Cohen's claim that he had a conflict of interest precluding further representation of petitioner did not establish manifest necessity, justifying a mistrial.  Trial counsel's perceived conflict was not insurmountable and would not have impaired the effectiveness of his continued representation.  Nor would continued representation have caused trial counsel to violate his ethical obligations to the court.  No actual conflict of interest existed.

Rather than declare a mistrial, the trial court should have required trial counsel to continue representing petitioner and to do one of two things.  If trial counsel knew that the

11

mother's testimony would be false, he had no obligation to petitioner to call the mother as a witness, and, in fact, was barred from doing so. *Nix v. Whiteside*, 475 U.S. 157, 173 (1986) ("the right to counsel includes no right to have a lawyer who will cooperate with planned perjury"); *United States v. Grayson*, 438 U.S. 4, 54 (1978) ("Counsel ethically cannot assist his client in presenting what the attorney has reason to believe is false testimony.").

On the other hand, if, as he said in the in camera hearing, he merely suspected or believed that the mother would possibly give false testimony, trial counsel remained free to make a tactical decision whether or not to call her as a witness. *See, e.g.*, RT, December 6, 2010, at 7 ["I feel (her statements) are false"].

Thus, the information Cohen received from the victim's mother did not give rise to a conflict of interest that precluded him from continuing to represent petitioner. As the California Court of Appeal has explained,

> Although attorneys may not present evidence they know to be false or assist in perpetrating known frauds on the court, they may ethically present evidence that they suspect, but do not personally know, is false. Criminal defense attorneys sometimes have to present evidence that is incredible and that, not being naive, they might personally disbelieve. Presenting incredible evidence may raise difficult tactical decisions – if counsel finds evidence incredible, the fact finder may also – but, as long as counsel has not specific undisclosed factual knowledge of its falsity, it does not raise an ethical concern.

*People v. Riel*, 22 Cal.4th 1153, 1217 (2000) .

In denying the petition for a writ of habeas corpus below, the California superior court stated that "[Cohen] also explained that he could not disclose without revealing confidential conversations with Petitioner why he could not go forward with his defense theory." Exhibit B, p. 15. The superior court misconstrued the record. Cohen referred to undisclosed, confidential communications in explaining why he did not believe that the exculpatory information from the victim's mother was credible, not as a reason why he could not effectively represent petitioner. RT, December 6, 2010, at 4. The nature of Cohen's claimed conflict was clear to the trial court, and the court should have recognized no actual conflict existed.

The state superior court's order denying the habeas petition emphasized that Cohen responded affirmatively when asked if he "'would be required to pull [his] punches in arguing on behalf of [his] client.'" Exhibit B at p. 15, quoting RT, December 6, 2010, at 8. Cohen's explanation of his answer, however, indicates that he was mistaken about whether his representation of petitioner would be compromised if he remained as petitioner's counsel. Cohen claimed he could not vigorously represent petitioner because his ethical duties to the court and petitioner were inconsistent. However, he had no ethical duty to petitioner to present evidence from a witness that he knew to be false or believed would be found incredible by the jury.

Both Cohen and the superior court had a fundamental misunderstanding of his ethical duties. Cohen did not have a conflict of interest that precluded him from continuing to represent petitioner. He could have continued to defend petitioner at trial without calling the victim's mother as a witness, either because he knew her testimony was false or because he did not think it would be viewed as credible by the jury. Had Cohen continued to represent petitioner without presenting this additional evidence and petitioner been convicted, the conviction would not have been subject to challenge on appeal on the ground that petitioner was denied effective assistance of counsel.

The conclusion that the trial court's decision to declare a mistrial was not justified by manifest necessity is also supported by the manner in which the decision was made. The trial court did not hear the opinions of the parties about the propriety of the mistrial. Rather, it abruptly declared a mistrial after erroneously accepting Cohen's claimed conflict of interest, without any prior indication it was considering such a remedy. The trial court also never considered the alternative that Cohen did not have an actual conflict of interest  The court never pressed Cohen to explain why, for example, he felt obligated to present the new evidence raised by the victim's mother if he either knew or believed it was false. Rather, the court seemed to accept, without serious inquiry, Cohen's bare representation that he was "in a state of

disqualification." RT, December 6, 2010, at 7.  Since Cohen was not in fact barred from continuing his representation, the court's declaration of a mistrial was in error.  Under these circumstances, a mistrial was not a manifest necessity.

  **E.**  **Since a Plea of Once-in-Jeopardy Would Have Barred a Retrial, Trial Counsel Was Ineffective for Failing to Assert it.**

  As discussed above, a plea of once-in-jeopardy would have been meritorious had it been asserted by either of the subsequent trial counsel.  This omission constitutes *Strickland* error: there is a reasonable probability that but for the unreasonable omission, the retrial would have been barred by the prohibition against double jeopardy.

  In addition, to the extent trial counsel were unaware of the reason the mistrial had been declared, they were ineffective for failing to conduct an adequate investigation. Had they simply requested to review the sealed transcript of the December 6, 2010 proceedings, they would have known that the retrial was barred by double jeopardy.  A criminal defendant's right to effective assistance of counsel includes the right to have counsel "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. at 691.  Here, where the first trial lasted well into the defense case before a mistrial was abruptly declared, subsequent trial counsel were clearly ineffective for failing to take even the basic steps to investigate the reason for the mistrial.

  Finally, there was no conceivable strategic justification for subsequent trial counsel to fail to object to the retrial on double jeopardy grounds.  Petitioner had nothing to lose and everything to gain from raising the issue.  Trial counsel were therefore ineffective for failing to investigate and raise the meritorious once-in-jeopardy claim.

**GROUND TWO: APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE THE CLAIM, ON APPEAL OR IN HABEAS CORPUS PROCEEDINGS, THAT TRIAL COUNSEL WAS INEFFECTIVE FOR NOT ENTERING A PLEA OF ONCE IN JEOPARDY OR OTHERWISE OBJECTING TO THE RETRIAL ON DOUBLE JEOPARDY GROUNDS.**

**Supporting Facts:**

On July 11, 2011, Attorney Jeffrey Glick was appointed as appellate counsel for petitioner. Glick did not raise the claim that trial counsel acted unreasonably in not entering a plea of once in jeopardy or otherwise objecting to the retrial on double jeopardy grounds.

**Supporting Authorities:**

It is well established that a criminal defendant has the right to the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 397 (1985). As explained above, petitioner's retrial was barred by the federal constitution, which prohibits a defendant from being placed in jeopardy more than once. Had appellate counsel raised the claim that trial counsel was ineffective on appeal or in a petition for writ of habeas corpus, petitioner's conviction would have been reversed. Appellate counsel's omission was objectively unreasonable and constituted ineffective assistance. Indeed, there was no conceivable strategic justification for appellate counsel not to raise the claim of ineffective assistance of trial counsel.

## CONCLUSION

For all of the reasons set forth in this petition, petitioner is entitled to the issuance of the writ of habeas corpus.

DATED: July 18, 2016                                    Respectfully submitted,


  /s/ Mark Goldrosen
MARK GOLDROSEN
Attorney for Petitioner
JAVED ASLAM